Thurnell HUNDLEY *v.* STATE of Arkansas

CA CR 87-69                                            738 S.W.2d 107

Court of Appeals of Arkansas
Division I
Opinion delivered October 28, 1987

*John L. Kearney*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

BETH GLADDEN COULSON, Judge. Appellant, Thurnell

Hundley, raises two points for reversal of his conviction on a charge of second degree battery. The second of these is couched in terms of a denial of due process, but it is in essence a continuation of the first point, which is addressed to the sufficiency of the evidence. We see no reason, therefore, not to treat the two arguments as one in our opinion. In any event, we find nothing in either argument to persuade us that the trial court was in error, and we accordingly affirm its judgment.

Appellant was charged under Ark. Stat. Ann. § 41-1602(1)(d)(iv) (Supp. 1985) with the criminal offense of battery in the second degree for stabbing Major Robert Perry, Chief of Security at the Tucker Maximum Security Unit of the Arkansas Department of Correction. The statute provides that

>    (1) A person commits battery in the second degree if . . .

>    (d) he intentionally or knowingly without legal justification caused physical injury to one he knows to be: . . .

>    (iv) an officer or employee of the State while such officer or employee is acting in the performance of his/her duty.

Following a jury trial, appellant, an inmate at the Arkansas Department of Correction, Tucker Unit, was convicted of second degree battery on Major Perry, and was sentenced to nine years imprisonment. From that verdict, this appeal arises.

As noted earlier, the principal point of appellant's argument on appeal is that the evidence presented at trial was insufficient to support the jury's verdict. We must, of course, affirm the jury's verdict if there is substantial evidence to support it. Substantial evidence has been defined as "evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other." *Jones* v. *State*, 11 Ark. App. 129, 135, 668 S.W.2d 30, 33 (1984). The evidence presented must force or induce the mind to pass beyond a suspicion or conjecture. *Id.* Contrary to appellant's assertion that a decision is to be reached "based on the evidence most favorable to appellant," in determining the issue of sufficiency, we consider the evidence in the light most favorable to the appellee. *Flurry* v. *State*, 18 Ark. App. 64, 67, 711 S.W.2d

163, 164 (1986).

Appellant contends that, at the time the stabbing occurred, Major Perry was not acting within the scope of his "lawful duty"; instead, he claims that the victim had been harassing appellant about the latter's long hair. In a most novel approach to the defense of "legal justification," appellant argues that,

> Taking the totality of the circumstances into account, any person in appellant's position would have reacted as he did. Appellant was at a severe disadvantage, being an inmate at Tucker Maximum Security Unit, and Major Perry knew this fact. He had the prime instrument to use against appellant, and that was to take away all that appellant had left, his hair. No man should be deprived of his only legal pride and joy. Thus, appellant did what any man would have done, he sought to protect that which was his.

In addition, appellant argues that the State failed to prove every element of the crime of second degree battery and thereby violated his right to due process. Specifically, appellant insists that the State failed to show that Major Perry sustained "physical injury," as required by the statute.

The record reveals that, at about 7:00 a.m. on July 14, 1986, Major Perry was assisting with the movement of prisoners in administrative segregation at the Tucker Maximum Security Unit from confinement to their work details. Each prisoner was taken from his cell and escorted out of the building individually at a distance of about fifty feet from the next inmate. None was handcuffed. Major Perry was standing just outside the double doors through which the prisoners were being escorted.

Appellant walked through the doors and proceeded about twenty or twenty-five feet before stopping, turning around, and walking back toward Major Perry. The Security Chief testified that he assumed that appellant, who had been released from punitive isolation the night before, wanted to speak with him as many other inmates, similarly confined, often did. Appellant came within three or four feet of Perry, who noticed he had a glove in his hand and was "fixing to take a swing." Attempting to fend off the blow, Perry leaned to the right but was struck in the left shoulder. Perry and another officer wrestled appellant to the

ground and, with the assistance of a third prison employee, handcuffed and subdued him.

Shortly after delivering appellant to the isolation area, Major Perry began to feel faint. He experienced chest pains and difficult in breathing and went to the infirmary for medical attention. The warden met with him in the infirmary and noticed blood on the back of his shirt. Perry was treated at the prison infirmary and later at the Jefferson Regional Medical Center. The prison official had been stabbed completely through the shoulder with a home-made, three-inch-long knife blade.

According to Major Perry, he never had any conversations with appellant concerning the cutting of his hair. The Department of Correction, Perry noted, has no regulations concerning hair or beards other than requiring them to be sanitary. In his own testimony, appellant stressed that his principal grievance against Major Perry was that the Security Chief had informed him, while he was in isolation prior to the incident, that he could not have returned to him a radio that had been altered and had two shanks stored in the back of it. The radio had been seized as contraband on Perry's orders. Appellant also stated that, besides the loss of the radio, he was retaliating for guards "beating me for, you know, not cutting my hair, you know, playing with my behind with them nightsticks and stuff like that." It appears that, at trial, appellant relegated the issue of his hair to a level of secondary importance. Moreover, on the basis of Major Perry's testimony that he never spoke to appellant about his hair and appellant's testimony pointing to prison guards as the source of comments, appellant's "legal justification"—an extremely shaky argument, at best—collapses under its own inflated weight.

■ As for appellant's contention that Major Perry was not acting "in the line of duty," the evidence clearly indicates that the Security Chief was fulfilling his official responsibility in supervising and assisting in the transfer of prisoners from administrative segregation to their work details. He was unquestionably performing, in the language of the statute, his "lawful duty" as an officer of the State when appellant attacked him.

■ Regarding appellant's assertion that the State failed to prove he had inflicted "serious physical harm" on Major Perry, we note that Ark. Stat. Ann. § 41-1602(1)(d) requires proof only

of "physical injury." This term is defined at Ark. Stat. Ann. § 41-115(14) (Repl. 1977) as "the impairment of physical condition or the infliction of substantial pain." In *Lair* v. *State*, 19 Ark. App. 172, 718 S.W.2d 467 (1986), this court affirmed the second degree battery conviction of another inmate at the Tucker Maximum Security Unit, who had struck a prison guard on the left side of his head near the eye with a handcuff. As a result of the blow, seven stitches were required to close the laceration. We found sufficient evidence of substantial pain. Here, the evidence is equally compelling, although the testimony was not as graphic in depicting Major Perry's pain as in *Lair*. The fact, however, that Perry reported chest pains, difficulty in breathing, and faintness after the flush of excitement and adrenaline had subsided is sufficient to show the infliction of substantial pain. Moreover, these same symptoms, which led Major Perry to seek medical attention, also show the temporary impairment of physical condition. Under these circumstances, we cannot say that there was insufficient evidence of physical injury to support a conviction under Ark. Stat. Ann. § 41-1602(1)(d)(iv).

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.